Thank you, Your Honor, and may it please the Court. Andrew Pincus for Appellants. I'd like, if I may, to reserve three minutes for rebuttal. The District Court committed three separate errors, each of which independently requires reversal and enforcement of the arbitration order. I'd like to begin with substantive unconscionability. Reversal on that ground will resolve this case, and the District Court's error is clear. Substantive unconscionability turns on the actual meaning of a contract provision, whether its legal effect is overly harsh, unduly oppressive, or so one-sided as to shock the conscience. The provision at issue here states, and I'm quoting from our opening brief at page 8, to the maximum extent permitted by law, the arbitrator shall award the prevailing party its costs and reasonable attorney's fees, provided, however, that the arbitrator at all times shall apply the law for the shifting of costs and fees that a court would apply to the claims asserted. The plain text expressly limits the arbitrator's authority to shift costs and fees to what a court would do with respect to the particular claims, and that's the exact rule that the California Supreme Court adopted on Mendares. It's stated at 6 Pacific 3rd at 765, and I'm quoting, the arbitration agreement or arbitration process cannot generally require the employee to bear any type of expense that the employee would not be required to bear if he or she were free to bring the action in court. A provision that so closely tracks Mendares cannot qualify as oppressive or unfair. Mr. Pincus, I think you suggest this in your brief, but I want to get it on the record here, if it's true, that the defendants then disclaim any fee shifting in the arbitration, that, in other words, that neither AMN or Kaiser have any right to recover costs or fees in arbitration for the claims. Is that correct? Yes. These claims, absolutely. Yes, Your Honor. Okay. Thank you. So plaintiffs advance two contrary arguments, neither of which is persuasive. So can I ask, though, are you making an argument that it wasn't procedurally unconscionable because it is somewhat confusing, that language? Well, we do argue it's not procedurally unconscionable. I'm focusing on substantive unconscionability right now because the Court can, if the Court finds no substantive unconscionability, can resolve the case without addressing procedural. So since we believe, we obviously think we're right on both counts, but the substantive unconscionability holding of the Court below is so clearly wrong that we think it's the easiest route to enforcement of the arbitration clause. And is your argument that there's only one way to interpret that language, even though it's somewhat ambiguous, so that it is consistent with, I think, is it Almendarez? Yes.  Well, we think that's the legal meaning of the provision, and there is only one way to interpret it, yes, Your Honor. And, in fact, the district court didn't disagree with that. The district court did not say this provision, the legal effect of this provision, would allow for fee shifting. The district court rested its decision on another ground. It claimed that regardless of the actual meaning of the provision, if the plaintiffs erroneously believed that it would permit fee shifting, that that was enough to find substantive unconscionability. Plaintiffs argue, they, plaintiffs advance the argument that the district court did not adopt here, which is this argument that it's actual legal meaning is that fees can be shifted. We think that's clearly wrong. The language, as I say, is exactly Peretz-Almendarez. It says, do what a court would do. The plaintiff's argument basically would shave the provision into three separate parts, one sentence into three separate parts, and ignore or give little meaning to the last clause, which says, provided, however, that the arbitrator shall apply the law that a court would apply. And we think that mode of interpretation violates multiple canons of construction under California law and just cannot be sustained. So let me turn to the second argument, which is the argument that the district court did adopt, which is that even if the provision's actual meaning is neither unfair nor oppressive, it's substantively unconscionable because they had the erroneous impression that employees might have to pay fees. We don't think it's confusing. I'll discuss that in connection with procedural unconscionability. But even if we assume it was, the critical point is confusion is addressed under procedural unconscionability. Counting it as well for substantive unconscionability would collapse the two-part test that California applies to a one-part test. That rewrites California law. Substantive unconscionability, maybe not surprisingly given the name, it turns on the substance of the provision. And we don't know of any decision of this court or the California Supreme Court that's held that a contract term whose actual meaning is not substantively unconscionable can nonetheless be substantively unconscionable because of a party's erroneous belief about its meaning. My friends on the other side rely on the Rendaris case. But there the court didn't address substantive unconscionability of the fee provision. It only addressed procedural unconscionability. They also rely on the... But, of course, it didn't need to address substantive because it found it procedurally unconscionable. No, it didn't. But it certainly doesn't stand for the proposition that an erroneous belief about the real meaning of a provision can create substantive unconscionability. But can't that... So I guess to probe the limits of substantive unconscionability in its relation to procedural, can't an ambiguous provision ever be substantively unconscionable if one of the readings can be construed to be unconscionable? Well, I think what courts have said, including this court, is that provisions that don't provide clarity, especially in this fee-shifting provision, that the Armendaris rule is the rule that applies, can be substantively unconscionable. For example, this court has said that provisions that say, for example, fees will be given may be shifted to the prevailing party unless controlling case law or express statutory provisions provide otherwise. And the court has said that that kind of provision doesn't substantively, is not sufficiently clear that it actually means that the Armendaris rule, no fee shifting to the employee, is actually adopted. So I think the way this court has adopted it is to look at the provision and say, what rule does it adopt? And in that case, the court has said, especially where there are questions about what controlling law means, about what express statutory provision means, and questions about what law applies. And all of those questions mean that that provision can't be said to embody the Armendaris rule. But here, because the provision actually embodies the Armendaris rule and says the rule that applies is the rule in court, we think it's clear that those cases don't apply. Well, I mean, what's the difference between the rule a court would apply and one would hope that a court would apply whatever controlling cases and statute tell it to apply? So those seem to be the same. Why is this language clearer than the language you recited as being unconscionable? Well, I think for a couple of reasons. Because I think controlling case law, express statutory provisions, I think what the court has said is those may limit the legal texts that can apply because they seem to sort of rule out things that might not be controlling but might be persuasive. They might rule out express statutory provisions that might otherwise apply. So here I think whatever the standard there, and it may be that there can be questions about that, here it's crystal clear. And also those provisions, because they don't tie to court, leave open the question of choice of law. And here basically all that's being said is whatever a court would do, the arbitrator must do. That constrains the arbitrator's authority clearly to the rule in Armendaris. If we were to get to the severance issue, why would the severance violate the FAA? Well, or the lack of severance, I'm sorry. Sure. Let me just start with California law because I think the critical question for the FAA is, is an unfairly discriminatory law being applied in the arbitration context? So the starting point is what are the California rules and then why is there, why would failing to sever here be a violation of the equal treatment rule that the FAA embodies? So the severance standard that the California Supreme Court and this court have adopted is that severance is strongly favored, the courts say, and it's basically a three-part test. Illegal provisions should be severed when the illegality is collateral to the purpose of the agreement, when the illegality can be cured via severance, and when enforcing the agreement is in the interest of justice. Counsel, let me ask you there, I don't mean to interrupt, but I do want you to address this. What is the central purpose of this arbitration agreement? The central purpose of this agreement is to resolve disputes through arbitration. Okay. And then would the cost allocation provision disrupt this purpose by making it, as the lower court suggested, more likely or less likely that, you know, some of the employees may say, ooh, I don't want to end up taking up a potential cost if I lose at arbitration, because they may not understand that under armandadis that's not going to happen. I think that approach basically means that severance would never happen, because it always will be the case that there's an unconscionable provision and the question is whether to sever it, and it often will be the case that the provision is unconscionable, because it is both procedurally, either there was coercion or it's opaque, and it's subsequently unconscionable. So if the rule is if people will be confused, we should never sever, then we would never sever, and that's sort of the opposite of California law. So then give me an example where it is appropriate. I think what the courts have said is it's appropriate, again, it may be appropriate where severance doesn't cure the illegality, where just redlining out or blue penciling out the provision doesn't leave an enforceable agreement or doesn't solve the problem. For example, there often are cases where the unconscionable issue is a lack of mutuality. There are some provisions that apply only to the employee or to the consumer, and it's not possible to sort of blue pencil out the provision, because you can't create mutuality if it didn't exist. So that's one example. Courts have also said where the agreement is permeated with unconscionability. There are so many unconscionable provisions. The court here relied on a different theory. That's the interest of justice theory, and what it said is I'm not going to sever because I think we need to deter the inclusion of clearly illegal provisions, and severing will not do that. And I think the issue here is this wasn't the clearly illegal provision because no court had ever held this provision to be unlawful or unconscionable.  And that would only violate the FAA if it was arbitration-specific. So what in the district court's order shows that that type of message to employers that you can't put this in is arbitration-specific? Well, I think the singling out of this provision, the California Supreme Court in Little said a critical question in deciding, in applying the interest of justice standard is whether it would have been clear when the agreement was signed that the challenge, the provision that has been held to be unconscionable was unconscionable. That isn't here because there was no precedent. And so applying that provision here, applying, refusing to sever here is completely contrary to California law. And there is a long line as we lay out in our brief. It might be contrary to California, but why is it arbitration-specific? Because there is a lot of, if you look at the decisions involving arbitration agreements and the decisions involving non-arbitration agreements, it's stark that the interest of justice standard. But why frame this as preemption rather than, right, to understand the work that the Supremacy Clause does, and I understand there may be cases that determine that case law can be preempted in violation of the FAA, but why isn't it just application of a facially neutral California standard that we're duty-bound to apply? Well, that's our principal argument, Your Honor, and we're perfectly happy for the court, if it were to reach the severance argument, to say that the district court abused its discretion because it applied the wrong legal standard. As a backup, if the court were to conclude that that wasn't the case, then we think there is a preemption issue. But our principal argument is that there is a preemption issue. You have a case? I mean, what would we look to to determine whether a court's, in this case a Federal court, under the Urey Doctrine, applying State case law that may or may not be in tension with an underlying State statute, that that's preempted? Well, Judge Bennett's dissent in Ronderos sort of discussed that issue in great detail, and of course the Supreme Court granted cert a while ago in a case called MHN to address this very issue out of concern that there — and that was also a case coming out of Federal court. Counsel, did the district court below address preemption? The district court did not. And so is it appropriate for us to do it? We think it is. It's a legal question. We think it's appropriate. As we say, that's like our fourth-line argument. We think there's no substantive unconscionability. We think that severance was appropriate under California law. We think there's no procedural unconscionability. But at the end of the day, yes. Do you want to say the rest of your time? I'd like to reserve the balance of my time. Thank you. May it please the Court. Austin Moore for the plaintiff, Sapolis. AMN's core premise here is that an arbitration agreement can never be substantively unfair unless there's a meaningful risk that down the road the arbitrator can take some unfair action against them, like shifting fees. But that is not the governing standard, and it's not a distinction that the case law draws. When determining substantive unfairness, the relevant question is not what an arbitrator might do later on down the road. It is whether the stronger party with superior bargaining power impose terms that are either overly harsh, unduly oppressive, or unfairly one-sided. But, Mr. Moore, the defendants say they didn't, and they've disclaimed that interpretation. Why don't you accept that? Well, they're disclaiming the interpretation that the employees would never actually be saddled with these fees, but what's the difference? Which is, is there any other source of the substantive unconscionability at issue here? Yes, Judge Johnstone. The language itself, and here's what it says. To the maximum extent permitted by law, the arbitrator shall award the prevailing party its costs and reasonable attorney's fees. If it's disclaiming the right to fees— I think we all understand. We do have to read past the semicolon to the rest of it, don't we? Absolutely, and I want to address that, because what comes past the semicolon doesn't actually inform the employees that what precedes the semicolon doesn't actually apply, and to us, that's what makes it an unfair, unduly burdensome and oppressive— But how is that not procedural unconscionability rather than substantive? Substantive unconscionability is what it means. The defendants have agreed, I think, with what you would argue in a different posture about what it means, that they can't, under California law, bear any of those costs. So this sounds like procedural, and you understand you need to get both, right? You need to get at least a little of both in order to prevail. Absolutely. But our point is, at the time of contracting, and that's when you have to assess the fairness of this clause, what is a layperson going to think? Well, the record shows they're going to be chilled because of this language. And because of that chilling effect, it is unfair, and it is one-sided. What's the—I mean, where should we look to frame that as substantive rather than procedural? I mean, the chilling effect kind of, you know, if we think about it in other aspects of the law, we think about it as coming from uncertainty, the indeterminacy of a provision. But that seems to sound in procedural rather than substantive. Where should we find this chilling effect landing in the substantive side as a matter of California law? Sure, Judge. Is it unfair? Is it one-sided? Because of the way it's drafted, that is going to have this deterrent effect. And the other point I would make, in the OTO versus— But the it is the legal meaning of the words in the contract, right, not the subjective understanding of the—for substantive, it's objective. Well, I think how a layperson would interpret it does go to whether the way it's drafted is fair or oppressive. But I think it was drafted in a way that is oppressive because it was intended to deter claims. My colleague said— Where does that come from, the intention to deter claims? Well, that kind of gets us to the severance analysis, where I think the— But how do you get that from this language, from the text of the arbitration agreement? Well, all the nurses testified that that first clause— But that's their subjective understanding, not intent of the drafter, right? It's their subjective understanding, but it's also coupled with the district court's objective reading of the language. Right, that's what I'm asking. So where in the objective reading of the language does it show their intent to discourage claims? Well, I think the language that says to the—well, just not to re-read the clause, but to the maximum extent permitted by law, the arbitrator shall award the prevailing party its costs and reasonable attorney's fees. Again, even— Why would a layperson read that and say, well, they're just going to follow the law? I think the point is the layperson is not going to know that, first, what law applies, and the nurses testified to that. And second, how are they supposed to know that the law would contradict the immediately preceding phrase? And I think that's where we're having the difficulty here. But then you go to the last part of the sentence, where it says arbitrators shall file—only do the cost shifting as the court would apply. Right. And, again, the nurses would not have known—that language to them was effectively meaningless because it did not actually inform them that California law prohibits this. And in the OTO versus Coe case, and to your question, Judge Johnson, how do we get to substantive unconscionability? One way we do, the Supreme Court agreed that if an arbitration agreement effectively takes hiring a lawyer to understand the key provisions, it does not provide access to an accessible or affordable option for resolving disputes. In other words, if AMEN's agreement shifts the financial burden onto the employee to understand it, to decipher the key terms, that goes to substantive unconscionability. If an arbitrator did shift those costs and fees to the employee, would the arbitrator be violating the agreement? I actually think it's very possible an arbitrator could read this and improperly shift fees to the employee, and I'll explain why. The qualifying clause says, the arbitrator shall apply the law for the shifting of costs and fees that a court would apply to the claims asserted. Right? So that phrasing matters because the law that would apply to that question varies by claim. For example, claims brought under the California Labor Code, fee shifting is limited. Employees can recover if they prevail. Employers can only recover if the employee brought the claim in bad faith. But our nurses here assert additional claims, common law claims like fraud, like breach of contract. But isn't that, Mr. Moore, why the argument and the logic that if the professional would have to consult a lawyer to understand the fees, that that proves too much? I mean, whether the fees are available, cost shifting or otherwise, set aside Armendariz, is itself part of the substantive claim, which no professional is going to understand what they do or don't have according to the agreement. They're going to have to consult an attorney. I mean, we're quite a ways down the road, and it can't simply be. I get that the Supreme Court and others have said that, you know, with respect to arbitration, if the language is just so unclear, you can't make anything of it. But in here, the fee shifting itself depends on questions such as the, and I think this is, again, part of your argument, but I'm just not sure it points the way that you suggest. It depends on the jurisdiction, right? So one, this is a contract that professionals in multiple jurisdictions, including jurisdictions that do not have the California rule, have to sign. There's then the underlying substantive law that sets up whether fee shifting is allowed or not, depending on the professional's claim. I mean, by the time you elucidate all of those, elaborate all of those terms and conditions about, well, if you bring this claim, it could be shifted in Arizona, but it can't be shifted in California. But if you bring this claim, it can't be shifted in either. How does that make it easier for a professional to understand than this language that's bracketed by two provisos? Well, I think this is, again, and we can talk about procedural unconscionability and the oppression and how this agreement was presented to them. But this is a 13-week assignment. If you're going to require nurses to arbitrate as part of a short-term 13-week employment, make the agreement as simple and straightforward as possible. If they're never... Would it have to, I mean, I guess, how do we avoid, if we adopt your rule, adopting a rule that requires the incorporation of, it would require a different contract for each state? I mean, maybe that's the rule you're urging, but it seems like that's what it would take, because the law in California is different from the law that would apply to professionals in other places, and the claim is determined by where the breach occurs, right? Well, I know AMN's arguing that it wants to capture the fee-shifting advantages in five minority-rule states. Are they not? To which they're entitled, I think. But my colleague argued that, well, we're never going to seek fees from the employees at all. And that's what this language says. Why not just say that in the agreement for everyone? Why not use plain language to make that point? Well, I guess it depends, right? I guess I took that to mean, and maybe Mr. Pincus can explain, but I took that to mean that with respect to these employees, the named employees, they are bringing California claims. And so, of course, they're not going to ask for something to which they're not entitled to, but there are other employees or professionals covered by this contract in other jurisdictions to whom it could apply. So if you're going to separate it on that basis, AMN's already tailoring the contracts for every single assignment, for every hospital, for every pay rate, adding state-specific language to it. So they would need jurisdiction-specific arbitration agreements. They could. That would be a way to make sure it's fair for all employees. Is there any case that would require someone in a contracting party who's contracting across jurisdictions to tailor it to each? I mean, it doesn't end just with the fee-shifting, right? It would cover lots of other claims that California may or may not recognize and that other states may or may not recognize. Well, I don't know that there's a requirement you would have to do that. You could also make clear in the savings language that California law does not allow this, or the majority of state laws would not allow this, right? So there's ways to draft it where it would be clear, and you maybe wouldn't get to that, what we call unfairness, because of how a layperson would objectively interpret it. And I'll just give an example, because under AMN's rule, the agreement could say that the statute of limitations for initiating a claim is three months, provided, however, the arbitrator must apply a statute of limitations the court would apply. Well, that is absolutely going to deter claims, because employees who maybe have a claim arise six months later are going to see that, and they're going to be deterred from pursuing claims. But under this rule, that would never be substantively unconscionable, because there's no risk an arbitrator would actually enforce it. And that's why we think that's the wrong question. What would an arbitrator ultimately do? It's how a layperson would understand the terms of the agreement.  Counsel, may I? Go ahead. I'm sorry. I wanted to actually ask you to talk about severance here. Your time is running low, so I just wanted to make sure you had an opportunity to address that. The district court did not abuse its discretion in Ramirez, the California Supreme Court case from just last year. The Supreme Court actually noted there was sort of a dearth of case law and authority interpreting what it means to be permeated by unconscionability and what are the right questions to ask. And relevant to this case, Ramirez held that a court is not required to sever or restrict an unconscionable term if an agreement has only a single such term. Instead, the appropriate inquiry is qualitative and accounts for the factors that Armendariz identified. The first question is whether the central purpose of the contract is tainted with illegality. If so, the contract cannot be cured. Severance is inappropriate. If it can be severed, the question then is whether it should be because in the interests of justice would be furthered by those actions. I think the key here is intent. Intent. The district court found that AMN included a fee-shifting clause strategically and with intent to deter potential valid claims. And severing this would be ----  Okay. So that's my problem with it then. So you're saying the intent is to prevent employees from bringing claims in arbitration, essentially, right? I think it is to deter because that ---- Right. Yeah. So then that's my problem with this. And then it does seem like it's an arbitration-specific rule that we're not supposed to sever when, you know, it would discourage employees from bringing arbitral claims. So here's where I would push back on that because Armendariz, if you look at footnote 13 of that opinion, when it set forth this test, it did it by surveying an analogous case of overly broad covenants not to compete. And it looked at all these case law, considering severance ---- But as it's replied by the district court, he seems to suggest that he's sending a message to employers that you can't have fee-shifting provisions in arbitration agreements. And that's a message specific to arbitration agreements. I think it's a little different. I think he's telling employers ---- Well, before you say that, you would agree if that were the case, that would violate the FAA, right, that it would be preempted by the FAA? I probably need you to repeat the question so I fully understand it. Well, basically, if I read what the district court is saying, it's like if that I'm sending a message to employers that they cannot include cost and fee-shifting provisions in arbitration agreements, you know, and that's why I'm not severing, that to me would violate ---- that would be preempted by the FAA. Potentially. But I really think that's a much narrower view than what the district court ---- So what do you think actually the district court actually did? Yeah. And look, when Armendariz was looking at this, it was in the context of non-compete clauses. And what they found was courts have tended to invalidate rather than restrict such covenants when it appears they were drafted in bad faith. And here what the district court found was the language in the agreement that says, you know, you're going to have to pay fees to the maximum extent permitted by law was put in there with a deterrent purpose. And if you do find that type of intent, severance is not appropriate. And we believe, you know, the district court did not abuse his discretion in reaching that conclusion. If I can ---- You're over your time. Unless my colleagues have any other questions, if you want to wrap up quickly. I was going to end just quickly with procedural unconscionability. This is a unique employment relationship. And there were ---- I think you're over your time for a new argument. Oh, I'm sorry, yes. Thank you. Just a couple of quick points, Your Honor. Our ---- my statement that we're not seeking fees is about these plaintiffs. And obviously, and these California claims. And obviously, it doesn't apply to claims that might be brought that would be governed by the law of the other states that allow that. This question of what law applies that my friend raises, and that that's sort of the critical question, I guess I'd have two responses. I think this is under procedural unconscionability. But just more generally, the critical question that someone faces in an arbitration agreement is, am I going to be disadvantaged in arbitration compared to where I would be in court? And this provision deals with that. It says, don't worry. You're going to have the same rules that apply in court. If my friend is right that you had to spell out every rule that governed not just fee shifting but every substantive claim, every restatement would have to be appended to every arbitration agreement. The OTO opinion, as I mentioned, there was no substantive unconscionability holding there tied to the fee shifting provision. What the court said there is that this tradeoff between the Berman statutory process and what it viewed as the very complicated litigation-like process in litigation was substantively unfair to the employee. So it didn't rest on fee shifting. Thank you. Thank you, counsel. This case is submitted.
judges: BUMATAY, JOHNSTONE, ALBA